Perkon *v.* Marnella, Appellant.

Argued March 20, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

320

*Bernard F. Quinn*, with him *Quinn, Leemhuis, Plate and Dwyer*, for appellant.

*John A. Blackmore*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 2, 1958:

On the evening of March 11, 1953, the Perkon family in Erie, feeling the need for some refreshment, asked Richard, the 16-year-old son, to go for some ice cream at the Jersey Creamery in the town. Richard mounted his motorcycle and set off on his pleasant mission. A few minutes later he was lying in the dust of Oakmont Avenue, his motorcycle overturned, and his right leg fractured in three places. Only 800 feet from his home he had collided with a truck which, unlighted and unattended, was parked on the same side of the street in the direction Richard was travelling.

Richard's father, Edgar Perkon, brought suit in behalf of the son and in his own right against the owner of the truck, Louis Marnella, and the jury hearing the case returned a verdict against Marnella in the sum of $9319.29 in favor of Edgar Perkon. The verdict slip made no mention of Richard. When the Trial Judge asked the jury for an elucidation of the verdict, the foreman replied: "The jury didn't find for the boy."

The defendant moved for judgment n.o.v. He also asked the Court to mold the verdict so that it would read: "We find for the defendant, Louis Marnella." The Court refused both motions, but of its own volition ordered a new trial.

The defendant has appealed to this Court, still urging judgment n.o.v. He argues that (1) the plaintiff did not establish "by clear and convincing evidence sufficient to visualize the occurrence in the minds of the jury an exception to the assured clear distance rule," and (2) that Richard Perkon was guilty of contributory negligence.

It is the contention of the plaintiffs that Richard was unable to see the parked truck on Oakmont Avenue because at the crucial moment a car coming from the opposite direction obscured his vision. The defendant says that the jury did not believe Richard's testimony in this respect. In support of this conclusion he asserts that the jury discredited the oncoming car theory because it failed to find a verdict in behalf of Richard who had testified to the oncoming car. But this argument while interesting, looks at only one prong of the verdict. The verdict had two prongs: one awarding money damages to the father, the other denying money damages to the son. If we are to accept the rule of law that, where judgment n.o.v. is involved, we must read the evidence in the light most favorable to the verdict-winner, we must give credence to the oncoming-car thesis. Otherwise, there would be no justification for the verdict in favor of the father-plaintiff. Since we cannot discard any evidence which supports the father's verdict, we must, so far as his verdict is concerned, accept the son's testimony which gives fiber and substance to the father's verdict.

The defendant maintains that the jury, by its verdict, intended to pronounce Richard guilty of contributory negligence. Of course, such a conclusion could fall within the realm of possibility, but it is also within the realm of possibility that the jury exonerated Richard of contributory negligence and refused to award him a verdict for any one of a score of other reasons. The jury may have felt that motorcycles are inherently hazardous or that a 16-year-old boy should not be out at night, even with his parents' consent. It would be the sheerest speculation to attempt to ascertain why the jury excluded Richard from the verdict. Thus, neither party can base any argument on the exclusion because neither party knows or can know the reason for the exclusion.

In refuting the oncoming car thesis the defendant declares in his brief that: "The minor plaintiff *did not* testify that an oncoming car had its bright lights on and he did not testify that the lights of the oncoming car blinded him." (Emphasis in brief).

This kind of a statement would suggest that in the enthusiasm of defending his cause the defendant has read the record through over-partisan spectacles. Richard actually testified as follows: "Q. And which direction were the lights going or coming? A. They were approaching me on the other side, I suppose. Q. And what effect did these lights have upon you? A. Well, as they got closer they got more brighter, and as they got more closer it got more difficult to see. Q. And then with respect to that—seeing those lights—when did the collision occur—how much later? A. Well, the lights passed and then all of a sudden this black thing was in front of me. I tried to swerve to the left, and I don't know, but the next thing I remember I was out in the middle of the road yelling. . . . Q. Well, as you were thirty feet away from the truck— A. How many? Q. Thirty feet away from the truck—Is there anything peculiar with that question, Richard? A. *Well, the lights were blinding me.* I couldn't say whether it was thirty feet." (Emphasis supplied.)

Since the defendant is seeking judgment n.o.v., he may not strip away from any piece of testimony an intent which supports the verdict and which is embraced within the general meaning of the language employed in that testimony. Even if Richard had not actually said that he was blinded by the lights of the other car but had used words which showed that at the time of crisis he was, with reason, unable to see a danger on the highway, he would still come within the exception to the assured clear distance rule. No rule of law requires that in depicting any certain

event, circumstance, or situation, the witness must use only certain verbal paints. The English language is expansive and expressive enough to produce word pictures through scores, maybe hundreds of differing word combinations.

The Court below was not only justified but required, in view of the nature of the verdict, to order a new trial. If Richard contributed to the happening of the accident through negligence on his part, the defendant is entitled to a verdict. On the other hand, if Richard was free of contributory negligence and the defendant was negligent, the son as well as the father is entitled to be properly compensated in monetary damages. As we said in *Todd v. Bercini,* 371 Pa. 605, 608: "When it is apparent that a jury by its verdict holds the defendant responsible for a whole loaf of bread, it may not then neglectfully, indifferently, or capriciously cut off a portion of that loaf as it hands it to the plaintiff." This same principle was approved recently in the case of *Pascarella v. Pittsburgh Rwys. Co.,* 389 Pa. 8 (1957).

Affirmed.

Mr. Justice BENJAMIN R. JONES concurs in the result.