## Gillespie *v.* Bentz, Appellant.

Argued October 5, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Murray R. Garber,* with him *Robert B. Apple,* for appellants.

*R. T. Mutzabaugh,* for appellee.

Opinion by Mr. Justice Musmanno, December 1, 1960:

The jury in this case awarded $10,000 to the children of, and $6,620 to the husband of, Emma Jane Gillespie, who was killed in an automobile accident. The defendant-appellants, William Bentz, Robert Bentz and Bentz Furniture Store moved for judgment n.o.v. and a new trial. The court below denied both motions and, from entry of judgment on the verdict, the defendants appealed.

Reading the record in the light most favorable to the verdict-winner, the following narrative of facts emerges from the evidence. On December 27, 1957, Robert Bentz, one of the defendants, was driving a Chevrolet furniture van in a southwardly direction on Route 68 between Kane and Marienville in Elk County. When he got to a point identified as Forest Hill Cemetery, and while ascending a steep grade in the road, the engine of his truck stalled. He tried to re-start it, but, failing in his endeavors, he instruced his helper, Joseph P. Skelly, to stand on the running board while he guided the truck, in reverse, down the cemetery hill he had been ascending. He had coasted in this fashion for some 375 feet when he arrived close to a sharp curve in the road, still on the hill, and here parked with the right front wheel of his vehicle on the berm to the right of the highway and the rest of the truck on the highway.

While this was happening, William Gillespie and his wife, Emma, were traveling in a Ford car from the north on the same road, mercifully unaware of the tragedy awaiting them on cemetery hill. Route 68, as it approaches the curve beyond which the Bentz van was halted, is lined with hemlock trees, which, rising from a steep bank, form a leafy curtain hiding what lies beyond the curve until one is practically within it.

Accidents are rarely the result of one fortuitous event or circumstance. It is the uncanny converging of sometimes wholly unrelated conditions which fashion the snare in which the unsuspecting victim is trapped. A stalled truck, an acute curve and an obscuring hemlock grove might still not be enough to overcome the forces of caution and vigilance which normally accompany every driver at the wheel who naturally has no desire to visit harm upon others and certainly not to himself. However, just as Gillespie was coming out of the curve, a shaft of sunlight broke through the hemlock branches, striking him in the eyes and blotting out everything before him. He was proceeding at the time about 45 miles per hour. He at once lifted his foot from the gas pedal and reached up to pull down the sun visor. In the several seconds which transpired while doing these things, his car had come to within 30 feet of the halted truck which, to Gillespie, struggling to regain normal vision, seemed a "big black shape" ahead of him.

Gillespie knew he could not stop in time to avoid hitting the obstruction. He swerved to the left, tramping on the accelerator. His left front missed the truck but the right front smashed into the lowered tailgate which projected out beyond the body of the van. Mrs. Gillespie, sitting in the front seat with her husband, receiving the full impact of the collision, sustained grave injuries to her head from which she died minutes later.

The defendants argue that no negligence was proved against them and that Gillespie was guilty of contributory negligence. At the point of the collision the road was 19½ feet wide. The width of the truck was 8 feet. If Bentz had moved his truck only several feet more off the road, as he could easily have done since the concrete roadbed here was flanked by a concrete berm 6 feet 10 inches wide and a dirt berm 7½ feet

wide, he could easily have left the 15 feet clearance on the highway, the space required by Art. X, §1019 of The Vehicle Code (Act of May 1, 1929, P.L. 905, as amended, Title 75, P.S. §1020.).

In addition, that same section of the code prohibits the parking or immobilization of a vehicle at any point on the highway where it may not be seen for 500 feet in each direction. The truck originally stalled at a spot on a straightaway which made it clearly visible to traffic (on this bright winter day) to traffic 500 feet from either direction. Instead of leaving it there or, by the force of gravity, guiding it a few feet to a spot where it would be totally off the traveled portion of the highway, Bentz coasted 375 feet down the hill to a place where he was not only not in any better position to seek assistance but where he offered mortal danger to motorists rounding the curve without ample notice of the obstruction in their path. Certainly this was a situation which called for a jury's determination as to whether Bentz had exercised the due care and concern which devolves upon persons using the highways of the State.

In *Jinks v. Currie*, 324 Pa. 532, we held that violation of that section in The Vehicle Code which prohibits overtaking and passing a vehicle in an intersection constitutes negligence per se. We believe that the clear violation of The Vehicle Code in the instances indicated in this case made out a clear case of negligence which the jury found was not overcome by the defendants' explanation and evidence. Thus, we see no reason why we should interfere with the verdict in this respect.

Nor is there anything in the record which should impel us to decide that Gillespie was guilty of contributory negligence as a matter of law. Here again a clear question of fact was properly submitted to the jury. Gillespie was not required by any rule of law to antici-

pate that Bentz would block the highway. If Gillespie's eyesight had not been momentarily affected at the crucial moment he negotiated the curve, he would have seen the truck in time to avoid hitting it. As it was, he needed only a fraction of a second more time in which to successfully complete his valiant swerve to the left, but *that* fraction of a second was denied him because of the fateful intervention of the sunbeam which effectually blindfolded him just long enough to allow the tragedy of his wife's death to unfold completely on the stage of the unexpected, unwanted, and unreparable.

The defendants argue that Gillespie was guilty of contributory negligence in proceeding at a speed which did not allow him to come to a stop within the assured clear distance ahead, thereby ignoring the provisions of The Vehicle Code, §1002(a), 75 PS §1002(a). But the elemental forces of nature are as much a part of the rules of the highway as what is contained in The Vehicle Code. If Gillespie had suddenly been shaken by a blast of thunder and blinded by a fork of lightning, he certainly would have been excused from the application of the assured clear distance rule. If a heavy squall of rain had suddenly cloaked a barrier in the road with invisibility, the assured clear distance rule would find its exception. But we do not need to pursue this subject hypothetically. This Court has already spoken authoritatively and definitively on the subject. As recently as January, 1959, Chief Justice JONES in the case of *Maranca v. Philadelphia,* 394 Pa. 531, 535, said: "It is well recognized that the assured clear distance rule has no application to a case in which a driver is blinded by the lights of an oncoming vehicle . . . Nor is it necessary, in order to exculpate a driver from a charge of having violated the assured clear distance rule, that he was totally blinded by the headlights coming toward him; it is sufficient if the testi-

mony shows that 'at the time of the crisis he was, with reason, unable to see a danger on the highway.' "

Then, the defendants argue, that when the sunlight shut off the plaintiff's vision, he should have stopped instanter. This is a matter of judgment. An instantaneous stop might break open a peril as awesome as proceeding ahead with a gradual stopping. There is always the danger that an impulsive standstill may hurl one's passenger through the windshield with its jugular-severing possibilities. Here again a rule of reason must apply. In the same *Maranca* case, Chief Justice JONES said: "When the light beam of an oncoming vehicle interferes with a driver's vision, it would be hazardous and impractical to require him, as a matter of law, to bring his car to an abrupt and sudden stop."

We do not need to expound the obvious that there is no difference in legal effect between momentary blindness caused by oncoming automobile lights and a spear of sunlight.

The record discloses a trial well conducted and well disposed of. We see no reason for disturbing the just verdict.

Judgment affirmed.

Mr. Justice BOK concurs in the result.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES would reverse and enter judgment n.o.v.