Williams *v.* Flemington Transportation Company
(et al., Appellant).
Smith *v.* Flemington Transportation Company
(et al., Appellant).

Argued November 15, 1963; reargued November 11, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John M. Eakin,* for appellants.

*George F. Douglas, Jr.,* with him *Faller and Douglas,* for appellee.

*Mark E. Garber,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 16, 1965:

Truck Power, Inc. and Harry Sweeney appealed from judgments entered on the verdicts after refusal of motions for new trial and for judgment n.o.v. On February 14, 1961, Kenneth J. Fisher, operating a tractor-trailer owned by Frank Luster and leased to Flemington Transportation Company, Inc., was eastbound on Route 11, about 7 and one-half miles west of Carlisle in Cumberland County. The highway at this point is macadam black top, 24 feet wide, divided by a broken white line creating two lanes of traffic each 12 feet wide. The Flemington vehicle was ascending a long grade of approximately 1900 feet, and when about 500 feet from the crest of the hill, the motor faltered, due to a malfunctioning fuel pump. The driver, Fisher, drove the vehicle to the right on to the berm, as far off the road as possible. There being a snow bank about 5 feet south of the paved portion of the road, Fisher could not get his vehicle completely off the road, and the vehicle was stopped parallel to the highway with 4 feet on the paved portion and 4 feet on the berm. It was about 7:00 o'clock in the evening when the truck stopped, and Fisher put out a lighted flare before leaving the vehicle to walk to a motel where he called Truck Power, Inc. for a service truck to come to his equipment for the purpose of getting it started. Fisher returned and found that the flare which he had set had gone out. He set another flare, with a life of about 20 minutes, and this also burned out while he was waiting for the service truck to ar-

rive. The service truck of Truck Power, operated by Harry Sweeney, an employee of Truck Power, arrived at the disabled vehicle shortly after 8:30 p.m.. Sweeney parked his truck on the left hand side of the highway, directly in front of the Flemington tractor, and about 2 feet from it, with its lights shining on the front of the tractor. Sweeney discussed with Fisher the placing of a flare, but Fisher had none to put out, having used the two that he had. Sweeney put gas in the Flemington tractor and proceeded, with Fisher's aid, to attach cables to the battery of the Flemington tractor, the battery being under the floor boards inside the cab.

Oliver McDonald, operating a tractor-trailer for Novick Transfer, Inc., was westbound on the highway and, at about 8:40 p.m., came over the brow of the hill and approached the place in the highway where the Flemington and Truck Power vehicles were stopped on the south side of the highway. When he had progressed about half the distance from the brow of the hill to where the vehicles were stopped, he saw them. About the same time, William Richmond Smith was ascending the hill eastbound, operating a tractor-trailer owned by Thomas M. Williams and leased to Dolly Madison Bakery. McDonald, realizing that he and the oncoming vehicle would arrive at the same time at the point on the highway where the disabled vehicle and service truck were stopped, turned his headlights on and off, in an attempt to warn the driver of the eastbound vehicle, and drove his tractor-trailer as far to the right as snow piled along the side would permit. The bakery vehicle struck the left rear of the disabled Flemington tractor-trailer, tearing along the side of it and pushing it and the service truck forward. It came to a stop about even with and parallel to the Flemington tractor. The driver of the bakery tractor-trailer, Smith, was thrown from the cab against the

left front of the Novick tractor and apparently bounced off the Novick tractor and under the wheels of the trailer he was operating. He was killed instantly. Sweeney called to Fisher when he saw the headlights of the bakery truck approaching and both men jumped from the cab into and over the snow bank. The disabled Flemington vehicle was a tractor with a flat bed trailer loaded with bricks, with a total weight of about 60,000 pounds.

Thomas M. Williams, the owner of the equipment, leased to Dolly Madison Bakery and operated by Smith, brought suit to recover for the damage to his property. Betty Sue Smith, the wife of William Richmond Smith, brought a survival action and an action for wrongful death. The cases were consolidated for trial. The amount of damages in the Williams case was stipulated and, in the Smith case, it was agreed that all of the damages should be consolidated in the wrongful death action. The jury returned a verdict in favor of Betty Sue Smith against the defendants, Flemington Transportation Company, Inc., Frank Luster, Kenneth J. Fisher, Truck Power, Inc., and Harry Sweeney, and a verdict in favor of the defendants, Novick Transfer, Inc., and Oliver McDonald. The jury returned a verdict in favor of Thomas M. Williams against the same defendants and in favor of Novick Transfer, Inc., and Oliver McDonald. By agreement of all of the parties in interest, the verdict against Frank Luster was set aside, and after appeal, the plaintiff, Betty Sue Smith, as trustee ad litem, with the approval of the court, executed and delivered to Flemington Transportation Company, Inc., and Kenneth J. Fisher, a release in accordance with the Uniform Contribution Among Joint Tortfeasors Act. We have for consideration the appeal of Truck Power, Inc. and Harry Sweeney.

Appellants raised four questions decided adversely to them in the court below. (1) No liability is in-

curred when the control of the disabled vehicle was not assumed. (2) The deceased operator of a vehicle which runs into the rear of a disabled vehicle is not presumed to have been blinded by lights of an approaching vehicle. (3) The deceased operator of a vehicle which runs into the rear of a disabled vehicle at night, when there were no flares on the disabled vehicle, or lights, is not presumed to have reduced the speed of his vehicle immediately upon being blinded by lights of an approaching vehicle. (4) The opinion testimony of an ophthalmologist should not have been received in evidence.

The trial judge did not submit the question of statutory duty under The Vehicle Code.[1] But the question was submitted to the jury whether Truck Power and its employee had used the care of a reasonably prudent person under the circumstances in failing to place flares. The question of control under the statute was, therefore, not material. The question was whether under the circumstances there was a duty upon Sweeney to place the flares. Of course if Sweeney had assumed control of the disabled vehicle, he would be duty bound under the statute to comply with the act, and if he did not do so, liability would be placed on him. The court en banc said: "The question presented is whether the operator of a service vehicle responding to a service call who finds the disabled vehicle upon the highway without flares owes a duty to others using the highway to place flares before directing his attention to the disabled vehicle. We have no difficulty in reaching the

---

[1] The Vehicle Code of April 29, 1959, P. L. 58, §836, 75 P.S. §836, provides, inter alia, that the operator or other person in charge of a vehicle having a registered capacity of 11,000 lbs., or more, parked on the main traveled highway during the period when lighted lamps must be displayed on vehicles, shall cause flares, lanterns, etc., to be placed on the highway 100 feet in the front and rear of such vehicle.

conclusion that such a duty exists. 'Among the natural inherent duties owed by every person to his fellows in his intercourse with them is that of protecting life and limb against peril, when it is in his power reasonably to do so.' 38 Am. Jur. Negligence, Section 14, page 656."

Several minutes elapsed from the time Sweeney arrived at the scene of the disabled vehicle until the accident. That he was aware of the dangerous situation is evident from his discussion with Fisher. Sweeney and his employer, Truck Power, were engaged in the business of rendering service to disabled vehicles for compensation. Appellants were not mere volunteers who happened on the scene as good samaritans. Appellants contend that there was no breach of a legal duty in not placing the flare and the jury should not be permitted to find an act or omission negligent when. there is no legal duty on appellants and, therefore, the jury should not be permitted to pass upon the matter when there was no breach of duty. Appellants, in the performance of their business of rendering services to disabled vehicles on the highway, owe a duty to users of the highway, and whether the proper standard of care has been exercised in the discharge of that duty is properly a question for submission to a jury. Under the circumstances of this case, the question was properly submitted to the jury, and the court was correct in refusing appellant's motion for judgment n.o.v. Cf. *Morris v. Lipkin*, 317 Pa. 422, 176 A. 434 (1935). See also, Restatement, Torts, §289. The business of supplying emergency service to disabled vehicles on the highway must certainly bring the realization to the service man that a disabled vehicle may be a hazard to the users of the highway. Sweeney realized this hazardous condition when he arrived at the Flemington vehicle disabled on at least four feet of the paved section of the highway, on a dark night.

Appellants maintain that there is no evidence that the decedent, Smith, was blinded by the headlights of the approaching Novick vehicle. It is conceded by appellants that the provision in The Vehicle Code[2] that no person shall drive any vehicle at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead, has no application in a case in which the driver is blinded by the lights of an oncoming vehicle. *Gillespie v. Bentz,* 401 Pa. 588, 166 A. 2d 25 (1960) ; *Maranca v. Philadelphia,* 394 Pa. 531, 147 A. 2d 413 (1959) ; *Perkon v. Marnella,* 392 Pa. 319, 140 A. 2d 799 (1958). Appellants further concede that the decedent is entitled to the presumption of due care. Nevertheless, appellants contend that the evidence of substantial damage to a heavily laden truck which was pushed up hill 43 feet and skid marks made by the vehicle driven by decedent, 150 feet in length, demonstrate the great speed of the decedent's vehicle. They argue that this evidence, with no countervailing evidence offered by appellee, overcomes the presumption of due care since a presumption is not evidence, and, therefore, the instant case is ruled by *Grutski v. Kline,* 352 Pa. 401, 43 A. 2d 142 (1945), where the court said: " 'While ordinarily, where a person has been accidentally killed, the law will presume that he had taken all necessary precautions to assure his own safety, that presumption has no existence as against the certainty that if he had acted more carefully in a particular instance he would not have died' ".[3] The jury had the relevant and material evidence for its consideration and the issue was properly placed before it by the trial judge, who carefully instructed the jury on presumptions and substantive evidence. It

[2] The Vehicle Code 1929 P. L. 905, §1002(a), as amended, 75 P.S. §1002(a).

[3] See *Watkins v. Prudential Ins. Co.,* 315 Pa. 497, 173 A. 644 (1934).

would have been, under the circumstances in this case, improper to have taken the matter from the consideration of the jury. The jury was entitled to pass upon the question.

Taking the question from the jury would have deprived decedent of the benefit of the full presumption that he is entitled to, for had he lived and was in fact blinded by the headlights of the oncoming vehicle, he would be entitled to place that matter before the jury for its determinations of the factual matter. This he would be denied by reason of his death. The trial judge properly submitted it to the jury. This case is distinguishable from *Griffith v. Weiner*, 373 Pa. 184, 95 A. 2d 517 (1953). As was said by Mr. Justice, now Chief Justice BELL, page 186: "The night was clear and there was no obstacle to obstruct the decedent's vision before he hit the truck; and no automobiles which might have blinded decedent were approaching from the opposite direction". There were elements present in the instant case which could prevent the decedent from discerning what was ahead of him. The uncontradicted testimony showed that the night was dark and there was no moon. The dark colored disabled vehicle was on an incline and would not present a silhouette, and the oncoming vehicle, with lights flashing on and off, could well have prevented decedent from seeing the disabled vehicle. The jury could have found such a condition to have existed and did by its verdict. The trial judge fully and ably presented the problem to the jury in a lucid charge.

In *Maranca v. Philadelphia,* supra, a recovery was allowed where a plaintiff drove into an unlighted obstruction on the highway, in the form of a ridge of earth and cobblestones approximately 3 feet in heighth and extending over 50 feet from the side of the street, the ridge of dirt and paving stones being undiscernible with the lights of other vehicles coming toward the

driver. In *Colonial Trust Co. v. Elmer C. Breuer, Inc.*, 363 Pa. 101, 69 A. 2d 126 (1949), there was a recovery where a driver ran into a coil of steel covered by a tarpaulin which had fallen on the roadway and presented the appearance of a patch on the road. In the case at bar there was evidence in the record from which the jury could infer that the decedent was blinded, and that the disabled vehicle with the surrounding circumstances made it difficult to see until he was within a short distance of the Flemington vehicle on the highway.

Appellants further maintain that the decedent is not entitled to the presumption that he reduced the speed of his vehicle immediately upon being blinded by the lights of the approaching vehicle. They maintain the presumption of due care was afforded the status of evidence and additionally, that the trial judge did not properly charge the jury in this respect. The judge charged on this point in the following language: "Once again, if you reach the conclusion that Mr. Smith should have seen this vehicle before this occurred, then even though you find the actions of McDonald blinded Mr. Smith, you would be warranted in finding that his actions were not the proximate cause of the accident that ensued. If he should have seen it, even though he was blinded; if he should have seen this vehicle and have slowed to avoid any contact with it prior to the blinding, then the blinding was not the thing that caused the accident." And again: "If an individual is traveling at such a rate of speed as makes him negligent prior to the time of his blindness, then he is unable to take advantage of this particular rule for the simple reason it is not the blinding that causes the result, but the excessive speed." The charge was proper and if counsel wished additional instruction, the point should have been called to the attention of the judge since he indicated he would give additional instruc-

tions on this point. Counsel should have reminded the court and not have sat by silently and then raise the question subsequent to the verdict. *Koenig v. Flaherty,* 383 Pa. 187, 191, 117 A. 2d 719 (1955).

The plaintiff's decedent is entitled to the presumption that he exercised due care while driving within the assured clear distance, and to the presumption that he slowed down when blinded. In the absence of evidence to the contrary in the plaintiff's case, the presumption of due care, in the instant case, includes the concept of driving carefully within the assured clear distance ahead; the concept of slowing down when blinded, and the concept of heeding the futile flashing light warning given by McDonald. "Every rule that one can conceive which is designed to protect and preserve human life is presumed to have been respected by the decedent . . . ". *Keasey v. Pgh. & Lake Erie R. R. Co.,* 404 Pa. 63, 170 A. 2d 328 (1961).

McDonald, the westbound truck driver, attempted to warn the decedent, Smith, by turning his headlights off and on. The trial judge permitted an ophthalmologist to testify as to the effect of the headlights of an oncoming truck being turned on and off on the eyes of a truck driver approaching from the opposite direction. The substance of the testimony was that: ". . . exposure of the eyes to a bright light temporarily removes the power to see in dim light. This is explained by a mechanism of the eye called adaptation. There are two functions. The pupil of the eye is a self regulation aperture to admit the light to the eye, and the retina—and the adaptation of the retina is a self adjusting variation of the sensitivity of the eye. This adaptation takes place very quickly to light. It is called light adaptation. Conversely, the adaptation to dark or dim adaptation takes considerable length of time. You all experience this when you go into a movie house. When you first go in, everything is

dark—after a couple of minutes you see. So exposure to a light—to a bright beam of light will temporarily remove the power to see dim objects, and if this bright, high beam, as you stated, is flashing on and off, this will as effectively remove the power to see dim objects. It is as if placing a board in front of your eyes because the dim adaptation has no time to take place with the continual flashing of the bright beam of light." The ophthalmologist was not able to express an opinion as to whether the decedent was blinded, as the many factors which were involved were not known to him and he so testified. The admission of the testimony under the circumstances was not reversible error.

Judgments affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In the absence of a factual determination that Truck Power was in charge or in control of the disabled vehicle at the time of the accident, there is no basis for imposing liability upon appellants.

The court below opened that portion of its charge relating to the liability of Truck Power with: "There is no statute that requires a service vehicle of that type to be equipped with flares . . . ." With specific regard to service vehicles, that aspect of the charge is accurate as far as it goes. However, The Vehicle Code does cover the situation in general terms. Section 836(b) of the Code, April 29, 1959, 75 P.S. §836,[1] provides: "Whenever any such [commercial, etc.] vehicle and its lighting equipment are disabled, during the period when lighted lamps must be displayed on vehicles, and such vehicle cannot immediately be removed from

---

[1] This provision was amended subsequent to the accident here in question. However, there was no change with respect to the individual upon whom rests the duty to place the warning lights or flares.

the main traveled portion of a highway outside of a business or residence district, or if the lighting equipment on any such vehicle is not disabled but, due to the position of such vehicle upon the highway *or by reason of contours or curves in such highway, it may constitute a menace to other vehicular traffic, the operator or other person in charge of such vehicle shall cause such flares,* lanterns, flashing signals *or other signals to be lighted and placed upon the highway* . . . ." (Emphasis added.)

The crucial issue under the statute is whether Truck Power had assumed control of the disabled vehicle and was under the statutory duty, as mandated by the Code, to cause flares to be placed on the highway at the front and rear of the disabled vehicle. That basic question admittedly was not submitted to the jury nor was it admitted of record.

The court below did charge as follows: "There is no statute that requires a service vehicle of that type to be equipped with flares but in your judgment would somebody who is in this business of going out to service trucks—and it was night time when the call was made —go prepared with flares to take care of lighting up any disabled vehicle they found, and if you find that a reasonably careful and prudent person under those circumstances would have gone so prepared, then the failure either to have them or the failure to put them out, if they did have them, would constitute negligence; and again you have the problem—was this negligence a proximate cause?"

Even assuming, as the majority holds, that such a common law duty is imposed upon a firm which provides highway service, the court below failed to instruct the jury as to that point in the course of conduct at which liability for breach of that duty may be incurred. Surely, such duty cannot be said to have been breached prior to the time at which the operator

of the service vehicle has assumed control of the situation or, in the language of The Vehicle Code, is "in charge of such [disabled] vehicle."

In my opinion, a breach of the duty imposed by the majority upon Truck Power cannot be found, either under the statute or common law, unless it first be determined by the jury that the driver for Truck Power did, in fact, take charge of the disabled vehicle. The record is clear that this issue was not submitted to the jury and no such finding was made.

The error below may be corrected only by the grant of a new trial. Therefore, I dissent.

Mr. Chief Justice BELL joins in this dissenting opinion.