ESTATE OF Pamela HE CROW, deceased, by Diane HE CROW, Administratrix ad Litem for Estate of Pamela He Crow, William He Crow, Carey Rouillard, and Audra Rouillard, by their Guardian ad Litem, Diane He Crow and Clarence Rouillard, Jr. by his Guardian ad Litem, Clarence Rouillard, Sr., and Clarence Rouillard, Sr., on behalf of himself, Plaintiffs and Appellees,

v.

Ron JENSEN, Defendant and Appellant.

No. 17692.

Supreme Court of South Dakota.

Argued May 27, 1992.

Decided Dec. 16, 1992.

Rehearing Denied Jan. 21, 1993.

Robert G. Mines, Hot Springs, Rita Haverly Allen of Hagen, Wilka, Schreier and Archer, Sioux Falls, for plaintiffs and appellees.

Donald A. Porter of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

The Estate of He Crow (decedent) brought this wrongful death action in Shannon County against defendant Jensen. Decedent's three children and one stepchild brought personal injury actions against Jensen for injuries sustained in the same incident. A jury trial was held before the Honorable Merton B. Tice, Jr., on May 7, 1991. The jury returned a verdict for the Estate in the amount of $1,000,000. The trial court entered judgment against Jensen on May 31, 1991. Jensen moved for a new trial, judgment notwithstanding the verdict and remittitur. Trial court denied these motions in an order dated September 21, 1991. Jensen appeals from the judgment and order denying his motions, by notice of appeal filed on September 27, 1991. Based upon error as set forth in Issues II and III, set forth below, we reverse and remand.

On appeal, Jensen raises the following issues:

I. *Did the issue of contributory negligence constitute a question of fact for the jury?*

II. *Did trial court err in finding Jensen's agent negligent per se?*

III. *Did certain statements by the Estate's counsel during closing argument constitute grounds for a mistrial?*

IV. *Did trial court abuse its discretion in jury selection?*

Due to our determination, we need not consider Jensen's Issue IV.

## FACTS

This wrongful death action arose from a traffic accident involving Pamela He Crow's (decedent's) automobile and Jensen's farm combine, resulting in decedent's death.

On October 23, 1989, decedent, with her three children and one step-son, was traveling west on Highway 18 between Oelrichs and Pine Ridge, South Dakota, in her 1978 Datsun. They entered a stretch of road which involved driving up a hill, then descended onto a gradual decline leading to a narrow bridge over White Clay Creek. About the time decedent's automobile hit the crest of the hill, Jensen's combine (driven by an employee of Jensen) prepared to enter the bridge traveling east. The combine header was 24 feet 9 inches wide. The bridge width was 30 feet wide. The combine entered the bridge at a speed of approximately three miles per hour.

Testimony admitted at trial attested to the fact that as decedent's car hit the top of the hill, the sun blinded decedent's eyes and the eyes of the occupants. Decedent's step-son testified that the occupants of the automobile could not see the bottom of the hill where the bridge was located. Decedent's expert witness testified that decedent's range of vision was less than one hundred feet, and may have been as little as ten feet. The combine was on the bridge when decedent finally saw it as she entered a shaded area near the bridge.

Decedent attempted to brake but did not have enough time and space, with the collision ensuing. The Estate's expert witness testified that decedent was only able to slow her car to 34 miles an hour before colliding with the combine.

Further discussion of pertinent facts to each related issue in dispute will be addressed in our consideration of those issues.

### Standard of Review

■ Historically, we have held that it is within the trial court's judicial discretion if a new trial should be granted, and we will not disturb that decision absent a clear showing of abuse of discretion. *Kusser v. Feller*, 453 N.W.2d 619, 621 (S.D.1990). An abuse of discretion occurs only if no "judicial mind in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion." *Estate of Pejsa*, 459 N.W.2d 243, 245 (S.D. 1990). *Jensen v. Weyrens*, 474 N.W.2d 261, 263 (S.D.1991).

### DECISION

I. *Did the issue of contributory negligence constitute a question of fact for the jury?*

■ Jensen strongly argues that the issue of contributory negligence should not have been submitted to the jury for determination. We disagree. Jensen argues that trial court abused its discretion in not granting his motion for a new trial, and, therefore, the judgment entered against him was improper. We agree that a new trial should be granted as set forth in our later discourse on different issues. This objection is based on the assertion that decedent's negligence was more than slight, as a matter of law, in comparison with Jensen's negligence.

■ In considering the issue of whether decedent was more than slightly contributorily negligent as a matter of law, thereby barring any recovery, we must examine our statute referring to comparative negligence. SDCL 20–9–2 provides:

In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

In considering the application of this statute to contributory negligence cases, we have said that, "[t]he comparison is made with the negligence of the defendant, rather than with the ordinarily prudent person ..." *Lovell v. Oahe Elec. Co-op*, 382 N.W.2d 396, 399 (S.D.1986). However, this Court must also consider, "the norm of conduct of an ordinary, reasonably prudent person ... in determining the extent to which each party fell below that standard, and thus, was found negligent or contributorily negligent." *Mitchell v. Ankney*, 396 N.W.2d 312, 313 (S.D.1986); *Lovell*, 382 N.W.2d at 399. The term "slight" in SDCL 20–9–2 has been defined to mean "small in quantum in comparison with the negligence of the defendant." *Crabb v. Wade*, 84 S.D. 93, 167 N.W.2d 546, 549 (1969); *Estate of Largent v. United States*, 910 F.2d 497, 499 (8th Cir.1990). It is a question of fact which varies with the facts and circumstances of each case whether a plaintiff's negligence is slight compared to that of the defendant. *Urban v. Wait's Supermarket, Inc.*, 294 N.W.2d 793, 796 (S.D.1980); *Estate of Largent*, 910 F.2d at 499.

A contributorily negligent plaintiff may not, however, recover anything in South Dakota if the plaintiff's negligence is more than slight in comparison with the negligence of the defendant. SDCL 20–9–2. Here, we cannot say that, as a matter of law, the decedent's conduct constituted negligence which was more than slight. Rather, we characterize this as a classic factual dispute which must be determined by the triers of fact, the jury. We refer to

a Supreme Court case in Pennsylvania. *See, Gillespie v. Bentz*, 401 Pa. 588, 166 A.2d 25 (1960). The Pennsylvania case also involved impairment of vision by the sun. The Supreme Court of Pennsylvania refused to hold that the driver was guilty of contributory negligence as a matter of law. In its rationale, the Pennsylvania court reflected that the driver was not required by any rule of law to anticipate that a vehicle would be blocking the highway.

█ Was the combine blocking the highway? Was it blocking the highway so that the He Crow vehicle could not pass through the bridge? Could the He Crow vehicle have avoided the combine? These are questions which a jury should decide. In *Gillespie*, the court dismissed the idea that the vehicle should have made an instantaneous stop to avoid a collision as it might precipitate another peril. Under South Dakota law, a driver may assume that other drivers will exercise ordinary care on the highways. *Burmeister v. Youngstrom*, 81 S.D. 578, 139 N.W.2d 226 (1965). Pamela He Crow, deceased, it can be argued, had the right to believe that Jensen would exercise ordinary care and, thus, not block both sides of the traveled portion of the road. We note that the driver of the combine testified that he did not travel faster through the bridge because he was afraid he might damage the combine. It might well be argued that it would have been better judgment to hurriedly cross the bridge to avoid a longer exposure to danger.

An accident reconstruction expert for the Estate testified that the combine was oversized and was taking up the entire roadway and that the driver of the combine did not stop or get off the road or make any effort to stop the combine. Further, this expert testified that the combine driver could easily have moved over to the right, by lifting the cutter bar on the header of the combine and then putting it out over the top of the bridge rail. Thus, the expert testified that both combine and automobile could have fit on the bridge if only the combine operator had made this adjustment. Another fact to be considered is that there were radios in the combine and in a truck driven by one of the other employees of Jensen. These employees did not use the radios which could have possibly obviated this tragic accident because the radios could have been employed to advise the combine driver when it would be safe to cross the bridge.

Appellant/Jensen owned the combine in question. On the date of the accident, Jensen's employees were harvesting a field for Schwarting, a farmer. Kaplan, Jensen's employee, was moving the combine from Schwarting's west field to his east field. No instructions or supervision on transporting the combine was given to employees on the manner or the route of moving the combine from the west to the east field. These apparent facts, coupled with the non-use of radios, plus the slow movement over the bridge and the non-removal of a header on the combine, establish that these are factual issues which a jury should consider. Therefore, we cannot say that the He Crow Estate may not recover anything because Pamela He Crow's negligence is more than slight, as a matter of law, in comparison with negligence of Jensen. SDCL 20–9–2.

We are not unmindful that decedent was quite familiar with this stretch of highway, having traveled it frequently. This stretch of highway was between decedent's house and her mother's house. The decedent had driven this same road two hours before that same day. Testimony was admitted that the sun's position and concomitant effect on vision was generally known among frequent travelers over this stretch of road. Jensen advocates that our decision in *Dartt v. Berghorst*, 484 N.W.2d 891 (S.D.1992), and *Howard v. Sanborn*, 483 N.W.2d 796 (S.D.1992), upholds his theory that He Crow was negligent in driving and that her negligence therefore bars recovery as a matter of law. We have reviewed both of these cases and hold that the facts are distinguishable from the present factual scenario. *Howard* involved headlights on a busy highway in the evening time, facts which are far different than this rural set-

ting. In *Berghorst,* inter alia, Berghorst admitted during the trial that he "shouldn't have hit the plow. I shouldn't have been in that kind of condition. I should have stayed behind him." Berghorst had been advised by C.B. radio that two snowplows were on the highway and it was difficult to see because snow was being kicked up by the plow. We simply hold that these two cases are inapposite to the case before us.

■ If under all of the evidence, both parties could be found to be negligent, the comparative negligence of the parties is a question of fact which is within the province of the jury. *Thomas v. St. Mary's Roman Catholic Church,* 283 N.W.2d 254 (S.D.1979). Trial court reasonably reached a legal conclusion, under the circumstances of this case, to submit this case for a jury's deliberation. No abuse of discretion is found on this issue. *Pejsa* at 245.

II. *Did trial court err in finding Jensen's agent negligent per se?*

■ In instruction # 24, trial court informed the jury that the court had found the operator of the combine to be negligent as a matter of law by violating the highway safety laws of the state in failing to utilize an escort vehicle. From a review of the record and based on this instruction, it appears trial court made this determination based on an administrative rule, ARSD 70:03:01:20. We hold that the determination that Jensen was negligent as a matter of law, based as it was on ARSD 70:03:01:20, is in error.

ARSD 70:03:01:20 provided, at the time relied upon by trial court, as follows:

Escort vehicles are required in front on two-lane highways or in the rear on divided highways for loads over 16 feet wide while on the interstate highway system and for loads over 20 feet wide while on the state highway system. The *permit-issuing authority* may also require escort vehicles because of route limitations, traffic conditions, or unusual *permit vehicle* configuration conditions.

Special traffic handling is required if the *permit vehicle* extends more than two feet into an adjacent driving lane or passing lane or if the width of the vehicle does not allow normal traffic to pass without either the traffic or the permit vehicle being driven on the roadway's shoulder. At a minimum, a ten-foot wide lane must be allowed for normal traffic to pass. Special traffic handling may also be required if the *permit vehicle* has to perform special maneuvers in order to make turns, cross bridges, or clear height restrictions.

Special traffic handling includes escorts and flagpersons located at the front or rear, or both, of the vehicle, or as required by the *permit-issuing authority,* to stop, advise, or hold normal traffic until the *permit vehicle* has completed its special maneuver or it can be pulled off the road at an intersecting road, turnout, or similar place and stopped to allow the normal traffic to pass. (Emphasis added.)

ARSD 70:03:01:20 has since been revised, though its terms have not been materially altered. However, in effect at this time is the following administrative rule:

*70:03:01:18. No permit needed for movement of hay, feed, or farm machinery by farmers—Exception.* Except on the interstate highway system, *farmers may move their own* overwidth and overheight but not overweight hay or stacked livestock feed, including baled feed, and their own overwidth and overheight but not overweight *farm machinery without a permit.* (Emphasis added.)

This rule exception is still in effect.

■ It is readily apparent from a reading of the administrative rules together that the section of the administrative rules in which they are contained pertains to vehicles which must obtain a permit from the permit-issuing authority. It is a general proposition that administrative rules are subject to the same rules of construction as statutes. *Nelson v. State Board of Den-*

*tistry,* 464 N.W.2d 621 (S.D.1991). Therefore, we construe administrative rules according to their intent as determined from the rule as a whole and other rules relating to the same subject. *See, Border States Paving, Inc. v. S.D. Dept. of Revenue,* 437 N.W.2d 872 (S.D.1989) (statutes construed according to their intent as determined from statute as a whole and enactments relating to same subject). Jensen did not violate ARSD 70:03:01:20 because ARSD 70:03:01:18 specifically exempts farm machinery from the permit vehicle regulations. It is undeniable that the vehicle Jensen's agent was driving was, indeed, a piece of motorized or self-propelled farm machinery. Cf. *State v. Poncelet,* 463 N.W.2d 673, 674 (S.D.1990). Further, it is equally undeniable that Jensen is, in fact, a farmer and that his agent was carrying out those activities for Jensen. Though Jensen was engaged in custom combining for another farmer, we find no indication in ARSD 70:03:01:18, or this section of the administrative rules as a whole, that this activity does *not* come within the definition of "farmers" therein, nor will we read such an implication into ARSD 70:03:01:18.

Additionally relevant to this discussion, is SDCL 32–22–3. This statute, as it existed in 1989, provided:

> *Except for farm machinery,* no motor vehicle may operate upon a public highway if the width, measured at the widest points, either of the vehicle or the load, exceeds one hundred two inches, excluding any required safety equipment. A violation of this section is a Class 2 misdemeanor. (Emphasis added.)

This statutory provision exempts "farm machinery" from SDCL 32–22–38.

We reverse the trial court's holding that Jensen was negligent as a matter of law, based as it was, upon a conceptual violation of ARSD 70:03:01:20.

III. *Did certain statements by Estate's counsel during closing argument constitute grounds for a mistrial?*

■ Jensen argues that trial counsel for the Estate (Mines) improperly requested a certain dollar amount for a damage award.

Jensen further argues that a one million dollar damage award by the jury was not justified or supported by evidence produced at trial.

Estate's counsel during closing argument twice requested a certain dollar value to be awarded from the jury in damages. He expressed:

> Cars cost a lot. Education costs a lot. It costs a lot to raise children, take care of them. *I'm going to try to put a figure on it* and, you know, whatever you decide, I'm sure the family's going to feel was very fair. And when you do this, we're not asking for sympathy. We're asking for justice, and *I'm going to ask you to give the children for the loss of their mother for the pecuniary loss 50,000 a year for 20 years until they reach the age of maturity.* (Emphasis added.)

It appears that by multiplication that this comes to the exact amount awarded by the jury, a million dollars. However, Estate offered no testimony by expert witness to opine on the monetary value for the pecuniary loss of the decedent's services. These statements on the future pecuniary value of the loss of decedent's services were obviously based on Estate's own calculations. We held in *Binegar v. Day,* 80 S.D. 141, 151, 120 N.W.2d 521, 527 (1963) that an attorney cannot make his closing argument "… an avenue for the presentation of unsworn testimony."

On one occasion, in a limited holding, this Court permitted unsworn testimony by an attorney during closing argument concerning damages. In *Stormo v. Strong,* 469 N.W.2d 816, 825 (S.D.1991), we held "Given the nature of the services provided and the absence of a well-established market to determine the cost of such services, we cannot say it was an abuse of the trial court's discretion … to permit Stormo's attorney to illustrate how such damages might be calculated." This all pertained to *past* services. The service in question was home health care. Furthermore, the *Stormo* jury actually heard evidence as to the amount of past services rendered by three lay witnesses and was asked to determine

an award for those services. Here, however, He Crow provided only conjecture for unascertained *future* services.

 Posed before this Court is this specific damage issue: In closing argument, may counsel request the jury to award a specific amount, without benefit of having presented specific evidence or testimony regarding the pecuniary value of decedent's services? In wrongful death actions, plaintiff has the burden of proving the pecuniary loss resulting from the death of the decedent. *Flagtwet v. Smith*, 393 N.W.2d 452, 455 (S.D.1986) (citing *Gilbert v. Root*, 294 N.W.2d 431 (S.D.1980)). The amount of damages to be awarded is a factual issue to be determined by the trier of fact. This Court reviews the issue on appeal under the clearly erroneous standard. *Pope v. Brown*, 357 N.W.2d 510 (S.D.1984). Damages must be established by facts, not by legal argument alone.

In the present case, the Estate, while listing the decedent's services, made no attempt during trial to put any monetary figure on their value. Estate presented no evidence showing actual economic loss. Thus, a jury had no basis upon which to reasonably assess the speculative value of the loss of a pecuniary value of decedent's services. *See generally, Flagtwet v. Smith*, 367 N.W.2d 188, 191–93 (S.D.1985) (trial court did not commit clear error in adopting expert witness testimony on computation of economic loss of decedent); *Jennings v. Hodges*, 80 S.D. 582, 129 N.W.2d 59 (1964).

We hold that it was clear error for the trial court to allow Estate's counsel to request a certain damage award amount in closing argument, under the state of the evidence. We reverse and remand on the issue of damages for a determination of a damage award, if any, in a new trial.

IV. *Did trial court abuse its discretion in jury selection?*

Several questions on jury selection were addressed by Jensen with the argument that the trial court committed error on being insensitive to the hunger potential of jurors and counsel, as well as rulings on juror qualifications. We shall not address these various arguments, fully briefed by both parties to this litigation, due to our treatment on the merits mooting out a necessity for treatment of Issue IV.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

SABERS, J., concurs in part and dissents in part.

SABERS, Justice (concurring in part and dissenting in part).

1. I agree with the majority that plaintiff's contributory negligence does not bar her recovery as a matter of law under Issue I.

2. On Issue II, I agree with the majority that the trial court erred in determining that Jensen's conduct constituted negligence per se as a matter of law.

3. Since we reverse and remand on Issue II, we should not reach Issue III. Anything we do say on Issue III is dicta because it is not necessary to the holding of the decision. If we discuss Issue III to provide guidance on retrial, we should caution only, not reverse, because there is evidence of substantial damages in the record. The children lost their mother's companionship, guidance and services for their lifetime. Counsel's request for "$50,000 a year for 20 years" is simply argument, not evidence, and the jury was so instructed. *See Stormo v. Strong*, 469 N.W.2d 816, 825 (S.D.1991) (not an abuse of trial court's discretion to instruct jury to use their own knowledge to establish a value for services and to permit plaintiff's attorney to illustrate how such damages might be calculated). *Stormo* is a very recent unanimous opinion of this court where we stated:

'The rule against indefinite or uncertain damages applies only to such damages as are not the definite or certain results of the wrong. Uncertainty as to the fact is fatal to recovery, but uncertainty as to the measure or extent of the damages does not bar recovery.' ... *However, it would be a better practice to present*

*some testimony on the reasonable value of the services actually provided.* *Stormo,* 469 N.W.2d at 825, (citations omitted) (emphasis added).

4. Since we reverse and remand on Issue II, I would not reach Issue IV either.