Jean HOWARD and Jim Howard,
Plaintiffs and Appellants,

v.

Robert D. SANBORN, Defendant
and Appellee.

No. 17625.

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 1992.

Decided April 8, 1992.

Charles M. Thompson of May, Adam, Gerdes & Thompson, Pierre, for plaintiffs and appellants.

Roy A. Wise of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and appellee.

MILLER, Chief Justice.

Jean and Jim Howard sued for damages sustained when their car was struck from the rear by a car driven by Robert Sanborn. Sanborn principally defended on

grounds of contributory negligence and unavoidable accident. The jury returned a verdict for Sanborn. This is an appeal from the orders denying Howards' motions for directed verdict and judgment notwithstanding the verdict. We reverse and remand for a new trial.

### FACTS

On the evening of November 20, 1987, Howards were enroute to dinner at the Cattleman's Club, a steakhouse which is located approximately five miles east of Pierre, South Dakota, on Highway 34. Jean was driving and Jim was in the passenger's seat. Jean testified that as they approached the driveway of the Cattleman's Club, she turned on her left turn signal and slowed to a stop.

Traffic was heavy that night and she had to wait for several cars to go by before she could safely make the left turn. Before making the turn, Jean noticed a car was coming up fast behind them. She remarked to her husband that she thought this car might hit them. Her husband had also seen the car approaching in the side mirror. He told his wife that she better turn quickly. Jean had started the turn when the vehicle driven by Sanborn crashed into Howards' car.

Howards initiated this suit against Sanborn to recover for damages they incurred as a result of the collision. Jean sought recovery for her personal injuries and other damages, including lost income and medical expenses. Jim claimed damages for replacement labor costs and loss of consortium. As noted earlier, Sanborn asserted contributory negligence and unavoidable accident and the jury returned a verdict in his favor.

On appeal, Howards assert that the trial court erred in: (1) instructing the jury on contributory negligence; (2) instructing the jury on unavoidable accident; and (3) giving the instruction on adjusting the award of damages to present value.[1]

---

**1.** We have considered Howards' last issue that the trial court erred in admitting tax returns and testimony about the farm operation. After reviewing the record, we believe the trial court acted within its discretion in admitting this evidence. *Stormo v. Strong*, 469 N.W.2d 816, 820 (S.D.1991) (citing *Zepp v. Hofmann*, 444 N.W.2d 28, 31 (S.D.1989)).

## I. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING ON CONTRIBUTORY NEGLIGENCE.

Howards contend that it was improper for the trial court to instruct on the issue of contributory negligence since there was no evidence in the record supporting it. Sanborn's defense of contributory negligence was based on two theories: (1) Jean, the driver, failed to signal; and (2) Jim, the passenger, failed to warn his wife of the approaching danger.

" 'In considering whether there is evidentiary support for an instruction, a reviewing court must give the evidence the most favorable construction it will reasonably bear. If there is some evidence bearing on the issue, a reviewing court will not disturb the trial court's giving of an instruction.' " *Gerlach v. Ethan Coop Lumber Ass'n*, 478 N.W.2d 828, 830 (S.D.1991) (quoting *Zee v. Assam*, 336 N.W.2d 162, 164 (S.D.1983)).

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributed to the injury complained of as a proximate cause."

*Gerlach, supra* (quoting *Starnes v. Stofferahn*, 83 S.D. 424, 432, 160 N.W.2d 421, 425 (1968)).

### Failure to Signal

■ At trial, Jean testified that she activated her left turn signal and that both her signal lights and brake lights were properly functioning prior to the collision. Sanborn testified that he was aware he was following a vehicle which was some distance ahead of him. He testified that he met several cars going the other way and their headlights affected his ability to see what was in front of him. He also testified

that a coyote on the highway that night distracted him momentarily.

The last vehicle that Sanborn met was a pickup with a skewed headlight. He told the investigating officer that he was blinded by the glare of this headlight and that when he recovered he saw Howards' car immediately in front of him. (Howards testified that they also saw the pickup with the skewed headlight but it did not affect their ability to see.) The investigating officer testified that *Sanborn told him* that he *did not see* a turn signal before the accident. *This hearsay testimony from the officer is the only evidence in the record on Jean's failure to signal!*

Finally, at the hearing on the motion for judgment n.o.v., the trial court stated the following:

> Well, one part of the motion that causes me some concern is the contributory negligence. When I look back on it, I don't recall testimony by Mr. Sanborn that—the only contributory negligence that I could possibly see that could have been imputed to Jean Howard in this case would be that she didn't have her turn signal on, and I just don't recall any proof on that point.
>
> . . . .
>
> Frankly, counsel, I've looked this over, and I think that I did make a mistake in submitting the contributory negligence[.]

These observations by the trial court were correct. Based on the record, it is clear there was no competent evidence indicating Jean failed to signal. Therefore, it was improper to instruct the jury on her alleged contributory negligence.

### Jim's Duty To Warn

■ This court has recognized that a passenger's duty differs from that of the driver. *Beyer v. Cordell,* 420 N.W.2d 767 (S.D.1988); *Miller v. Baken Park, Inc.,* 84 S.D. 624, 632, 175 N.W.2d 605, 609 (1970). In *Beyer,* we stated:

> If the guest sees, or ought by due diligence to see, a danger not obvious to the driver, or sees that the driver is incompetent, careless, or not taking proper precautions, it is his duty to *give some warning of danger, and a failure to do so constitutes contributory negligence* [.]

420 N.W.2d at 769–70 (citing *Hanisch v. Body,* 77 S.D. 265, 90 N.W.2d 924 (1958), quoting 5A Am.Jur. *Automobiles & Highway Traffic* § 789).

The danger in this case (Sanborn's approaching vehicle) was obvious to both driver and passenger. In fact, Jean commented to her husband that she thought the car coming up behind them was going to hit them and he told her to turn quickly.

These facts do not give rise to a duty on Jim's behalf to warn Jean of the danger. *Beyer, supra.* Accordingly, the trial court erred in instructing on Jim's alleged contributory negligence.

Under South Dakota law and the instructions as given, the plaintiff is totally barred from recovering if the jury finds the plaintiff to be contributorily negligent in an amount more than slight. Thus, this instruction was extremely prejudicial to Howards. We believe the jury's verdict may and probably would have been different if the jury had not been instructed on contributory negligence.

### II. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING ON UNAVOIDABLE ACCIDENT.

■ Howards correctly assert that the trial court's submission to the jury of the instruction on unavoidable accident was prejudicial error.

We have stated that the propriety of such an instruction depends on the facts of each case. *Stevens v. Wood Sawmill, Inc.,* 426 N.W.2d 13 (S.D.1988) (reversible error to give instruction where unattended truck rolled down hill and injured plaintiff).

> "Although we believe unavoidable accident instructions should be restrictively used we do not favor ... total exclusion.... Such instruction may properly be given in those cases where there is evidence that something other than the negligence of one of the parties caused the mishap. It is particularly apt where the further element of 'surprise' is

present such as the sudden and unexpected presence of ice, the blowout of a tire, the malfunction of brakes, or other mechanical failure." ·

*Id.* at 17 (quoting *Cordell v. Scott,* 79 S.D. 316,322-23, 111 N.W.2d 594, 598 (1961)).

Further, this instruction is not proper where the incident is reasonably foreseeable. *Stevens, supra. See also Hoffman v. Royer,* 359 N.W.2d 387 (S.D.1984) (reversible error to give instruction where passing defendant collided with a truck turning left on highway); *Plucker v. Kappler,* 311 N.W.2d 924 (S.D.1981) (improper instruction but not reversible error where defendant knew of icy road conditions); *Del Vecchio v. Lund,* 293 N.W.2d 474 (S.D. 1980) (reversible error to give instruction where defendant boat driver killed water skier on crowded lake); *Meyer v. Johnson,* 254 N.W.2d 107 (S.D.1977) (reversible error to give instruction where defendant knew of snow and slippery road conditions and was familiar with the road and its curves); *Alley v. Siepman,* 87 S.D. 670, 214 N.W.2d 7 (1974) (trial court did not err in refusing to give unavoidable accident instruction where element of surprise was lacking); *Herman v. Spiegler,* 82 S.D. 339, 145 N.W.2d 916 (1966) (instruction improper but not reversible error where vehicle collided with unlighted tractor pulling a stackmover on foggy morning); *Cordell, supra* (reference to unavoidable accident instruction was at most unnecessary surplusage in accident on icy road).

Based on the facts of this case, we hold the instruction was both improper and prejudicial. The facts reveal that no surprise factor was present. Sanborn testified that he had traveled on this stretch of Highway 34 every day, twice a day, for over thirty years. He knew the highway was busy that night and he knew people often stopped to turn into the Cattleman's Club. Prior to the accident, he saw Howards' taillights and knew a car was ahead of him.

Sanborn argues that the skewed headlight satisfies the "surprise" element; however, it has been recognized that the presence of "blinding headlights ... [is] not [an] intervening cause but [is among those] conditions which impose on drivers the duty to assure that safety of public by the exercise of a degree of care commensurate with such surrounding circumstances." 2 Blashfield *Automobile Law and Practice* § 53.6, p. 386. · *See also Pleinis v. Wilson Storage and Transfer Company,* 75 S.D. 397, 400, 66 N.W.2d 68, 71 (1954) (blinding headlights are a condition which would call for some diminution of speed or care on the part of the defendant.) Interestingly, as noted earlier, this skewed light did not affect Howards' vision.

We must reiterate to the trial bench and bar that the unavoidable accident instruction was intended to have *restricted* use. (In fact, the comments to South Dakota Pattern Jury Instructions indicate that this instruction is not recommended.) Since *Cordell* was decided in 1961, each subsequent case on appeal has found the instruction to be improper. In all but two cases, it was found to be reversible error. In light of the evidence presented, this instruction unduly and improperly emphasized Sanborn's position and was prejudicial to Howards. *Id.; Del Vecchio,* 293 N.W.2d at 476.

III. WHETHER THE TRIAL COURT ERRED IN APPROVING AN INSTRUCTION ON ADJUSTING THE AWARD OF DAMAGES TO PRESENT VALUE.

The jury did not ultimately reach this issue; however, because we remand for a new trial, we will address it.

Howards contend that the trial court erred in giving an instruction which generally expanded upon the pattern instruction by adding a section on how to calculate the present cash value and included a present worth table, when no evidence was offered to support such an instruction. The trial court's Instruction No. 26, which is nearly identical to the federal instruction from *Federal Jury Practice and Instructions,* Devitt, Blackmar and Wolff, Vol. 3, § 85.11 (1987), reads as follows:

If you should find that plaintiff Jean Howard is entitled to a verdict, and further find that the evidence in the case establishes either: (1) a reasonable likeli-

hood of future medical expense, or (2) a reasonable likelihood of loss of future earnings, or if you should find that plaintiff Jim Howard is entitled to a verdict, and you further find the evidence establishes a reasonable likelihood that he will be deprived of the services, aid, comfort, society, companionship and conjugal affections of his wife then it becomes your duty to ascertain the present worth in dollars of such future damage, since the award of future damages necessarily requires that payment be made now for a loss that will not actually be sustained until some future date.

Under these circumstances, the result is that plaintiffs Jean and Jim Howard will in effect be reimbursed in advance of the loss, and so will have the use of money which they would not have received until some future date, but for the verdict.

In order to make a reasonable adjustment for the present use, interest free, of money representing a lump-sum payment of anticipated future loss, the law requires that you discount, or reduce to its present worth, the amount of the anticipated future loss, by taking (1) the interest rate or return which such plaintiffs could reasonably be expected to receive on an investment of the lump-sum payment together with (2) the period of time over which the future loss is reasonably certain to be sustained; and then reduce, or in effect deduct from, the total amount of anticipated future loss whatever that amount would be reasonably certain to earn or return, if invested at such rate of interest over such period of time; and include in the verdict an award for only the present-worth—the reduced amount—of anticipated future loss.

As already explained to you, this computation is made by using the so-called "present-worth" table (present worth of one per period), which the Court had judicially noticed and which are attached to this instruction for your use.

Bear in mind that your duty to discount to present value applies only to loss of future earnings, future medical expenses or loss of consortium and not to any other damages the plaintiffs may have sustained in this instance. Also bear in mind that the evidence of Jean Howard's claim for loss of future earnings as submitted by Dr. Brown has already been reduced to present value. It is, however, your duty to determine whether his adjustment for present value of that claim was reasonable, and if not, you should make your own adjustment for present value of any sum to which you determine Jean Howard is entitled, if any.

The federal instructions also include an alternative instruction entitled "Lost Wages and/or Earning Capacity—When Economic Experts Testify." *See* Devitt, Blackmar and Wolff, § 85.12.[2]

2. Devitt, Blackmar and Wolff, § 85.12, provides:

Now in the event that you should find that plaintiff is entitled to an award of damages in this case for loss of wages and/or future earning capacity, you should take into consideration such loss after income tax; that is, you should determine the actual or net amount that plaintiff has lost or will lose, taking into consideration that any past or future earnings would be subject to income taxes, and you should award plaintiff only what he actually has lost or will lose, that is, his earnings less any such tax that would be due on them. Further, in consideration of such loss and to the extent there is evidence concerning such, you may take into consideration the following factors: the number of years the plaintiff may be expected to live and work; his wages and fringe benefits, his likely wage increases due to promotions, seniority or experience raises, merit raises, and the effect of inflation or deflation on his future wages.

Since money can earn interest, an amount to cover a future loss of earnings is more valuable to plaintiff if received today than if the same amount is received in the future. Therefore, if you decide to award plaintiff an amount for future loss of earning capacity, it must be discounted to present value by a factor equal to an after tax rate of return on a risk free investment according to accepted economic principles. Although you are not bound to accept the conclusions or opinions of the economists who testified during the trial, I instruct you that their testimony on discount was based on acceptable economic principles.

In the event you find that plaintiff is entitled to receive an award for physical disability, mental and/or physical pain and suffering, past, present, and future, I instruct you

South Dakota law "is silent on the issue of proper computation of the discount rate for estimating the present value of future income." *Robichaud v. Theis*, 858 F.2d 392, 396 (8th Cir.1988). Additionally, the South Dakota Pattern Jury Instruction does not tell the jury how to reduce the damages.[3] As of yet, neither this court nor the United States Supreme Court has endorsed one particular method for determining present value. Some states have either statutorily or judicially endorsed a method.[4] We determine that, at this time, we should clarify the meaning of our previous holdings on how to properly instruct the jury on reducing awards to present value.

We held in *Watkins v. Ebach*, 291 N.W.2d 765, 767 (S.D.1980): "Although it is true this court has never held that the trial court must give a present value instruction regarding loss of future earnings, we think that this requirement should now be imposed." In that case, we adopted the prevailing rule that damages for loss of future earnings should be reduced to present value. However, therein we went on to say that the record did not support the giving of such an instruction because the appellant/defendant "offered no *testimony* upon which the jury could have made an intelligent decision on reducing

the award for loss of future earnings to present value." *Id.* (emphasis added). *See also Flagtwet v. Smith*, 367 N.W.2d 188 (S.D.1985).

■ We used language in *Watkins* that might suggest that expert testimony is required in every case where future earnings might be awarded. We now hold that expert testimony on the reduction of future earnings is *not required* in every case. However, if an expert testifies and reduces the damages to present value for the jury, an instruction (such as the one given in this case) which includes present worth tables must be carefully crafted to prevent confusion. We believe the instruction given by the trial court here was adequate and not confusing.

■ When there is no expert testimony on present value, as in *Watkins*, then the jury must have some direction to help it intelligently reduce the award to present value. In *Watkins*, we quoted with approval from *Brodie v. Philadelphia Transportation Co.*, 415 Pa. 296, 203 A.2d 657, 660 (1964), wherein it stated:

The involved process of reducing future losses to their present worth has, undoubtedly, led to confusion and guesswork verdicts. *Reason, logic and fairness would, therefore, dictate that en-*

that such an award is not subject to income tax, and any amount which you award on this basis will not be taxed by the federal or state government. You are not to consider the effect of tax on said sum because no tax will be due on it.

3. Pattern Jury Instruction 30–07–(2) provides:

If you should find that the plaintiff is entitled to a verdict, and further find that the evidence in the case establishes either: (1) a reasonable likelihood of future medical expense, or (2) a reasonable likelihood of loss of future earnings, then it becomes the duty of the jury to ascertain the present cash value in dollars of such future damage, since the award of future damages necessarily requires that payment be made now for a loss that will not actually be sustained until some future date.

Under these circumstances, the result is that the plaintiff will in effect be reimbursed in advance of the loss, and so will have the use of money which plaintiff would not have received until some future date, but for the verdict.

"Present cash value" means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal the amount of the expenses and/or earnings at the time in the future when the expenses must be paid or the earnings would have been received.

Damages for pain, suffering and mental anguish/disability/and/disfigurement are not reduced to present cash value.

4. *See* Minn.Stat. § 604.07 (1986). "The objective of the [Minnesota] method is to determine the 'real' yield of money: that portion of interest charged on virtually risk-free investments that represents only the real cost of money and not the additional cost the lender charges as a hedge against inflation." *Kleeman v. Cadwell*, 414 N.W.2d 433, 437 (Minn.App.1987) (citations omitted). In Iowa, the discount "rate to be used is the one found by the jury from the evidence to be fairly expected from reasonably safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in the locality." *Von Tersch v. Ahrendsen*, 251 Iowa 115, 122, 99 N.W.2d 287, 291 (1959).

*lightenment is necessary.* Such can be provided, at least in part, by permitting the *use of accepted tables or the testimony of a qualified expert,* who can compose the proper computations.

This reflects our acceptance of the practice of *either* providing the jury with instructions including tables or some other helpful means to reduce to present value, *or* providing an expert to reduce the damages for the jury. We generally approve of the Devitt, Blackmar and Wolff instructions cited above.

Accordingly, we reverse and remand for a new trial consistent with the foregoing.

WUEST, HENDERSON, SABERS and AMUNDSON, JJ., concur.