421 S.E.2d 271

**Debra ADKINS, Plaintiff Below, Appellee,**

v.

**Mark FOSTER and Kathy Giauque, Defendants Below, Appellants.**

No. 20652.

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1992.

Decided July 23, 1992.

Michael C. Allen, Duane C. Rosenlieb, Jr., Charleston, W. Va., for appellee.

Mary H. Sanders, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, W. Va., for appellants.

WORKMAN, Justice:

This is an appeal by Mark Foster and Kathy Giauque from a final order, pursuant to a jury verdict, in favor of the appellee, Debra Adkins, in the amount of $222,-133. The appellants contend that the trial court committed various errors which justify reversal of that final order. We reverse and remand for a new trial on the issue of damages alone, with special emphasis on the establishment of future economic damages to a reasonable degree of certainty.

I.

On June 21, 1986, Debra Adkins was a passenger in an automobile driven by Joseph Hammonds. That automobile was struck by a vehicle driven by appellant Mark Foster and owned by appellant Kathy Giauque. As a result of that accident, the appellee suffered a cervical strain and an exacerbation of her preexisting depression. At trial, the appellee submitted medical bills in the amount of $2,768. With regard to evidence of other economic loss, the appellee had apparently planned to introduce the testimony of economist Daniel Selby.

On the first day of trial, defense counsel moved to exclude the testimony of Mr. Selby since the witness had not been disclosed prior to the discovery deadline, and the circuit court granted the motion.

At the close of the plaintiff-appellee's evidence, defense counsel moved for a directed verdict on the lost wage claim, and the lower court granted that motion.[1] The lower court denied defense counsel's motion for a directed verdict on the diminished earning capacity issue, however, and explained that defense counsel would be permitted to address the issue of the impairment of future ability to earn during trial.

The appellee's evidence at trial regarding diminished earning capacity consisted of statements presented by the appellee with regard to her hourly rate when she had been working and the number of hours worked per day. The appellee's counsel also addressed the diminished earning capacity issue in closing argument, explaining that considering the appellee's age, life expectancy, and normal rate of pay, she had suffered diminished earning capacity in the amount of $447,825. Counsel for the appellee also explained that the figure should be reduced to its present value by dividing it in half. The jury verdict returned on May 8, 1991, was in favor of the appellee for $222,133.[2]

■ The appellants contend that the following errors were committed: 1) the trial court erred by giving an instruction on the issue of the appellee's diminished earning capacity when the appellee had failed to introduce evidence of diminished earning capacity; 2) the trial court erred by allowing the appellee's counsel to suggest during closing argument a method of determining the appellee's damages for dimin-

ished earning capacity; 3) the trial court erred by allowing the appellee's counsel to suggest the amount of damages that the jury should award to plaintiff;[3] 4) the trial court erred by failing to grant the appellants' motion for a new trial based on the alleged excessive verdict; 5) the trial court erred by failing to grant the appellants' motion for remittitur based on the alleged excessive verdict.

## II.

The primary issues to be determined by this Court are whether the trial court erred by permitting the appellee and her attorney to attempt to calculate an award of diminished earning capacity, based upon insufficient evidence, to attempt to calculate the present value of the loss in the absence of expert, or other formal, economic evidence, and to permit the jury to consider the issue of diminished earning capacity based upon the amount and nature of the economic evidence presented. The appellee and her attorney employed evidence of the appellee's age, life expectancy as determined by the appellee's physician, and normal rate of pay to arrive at a figure of diminished earning capacity. The attorney then suggested to the jury that the figure could be divided in half to calculate the present value of that amount. While more extensive expert economic testimony is typically presented, the question remains of whether it is error to premise an award of diminished earning capacity upon the economic evidence introduced through the more simplistic method employed in the present case.

■ With regard to the instruction presented to the jury on diminished earning

---

1. The appellee was unemployed at the time of the accident and had not been employed since a 1988 work-related knee injury. The orthopedist treating the knee injury had not released the appellee to return to work and had not given her an expected date of return.

2. The appellants emphasize that this verdict was almost exactly the amount which would have been derived from employing the calculation provided by counsel for the appellee in his closing argument.

3. Appellees failed to object at trial to assignments of error (2) and (3). As we have previously recognized and as the appellee concedes, failure to object to alleged errors at trial is considered a technical waiver of the right to object to the alleged error on appeal. *Roberts v. Stevens Clinic Hosp., Inc.,* 176 W.Va. 492, 496, 345 S.E.2d 791, 795 (1986). We do, however, address this issue despite counsel's failure to object at trial.

capacity,[4] the appellants contend that the lower court erred in instructing the jury on that element of damages when sufficient evidence was not presented to support such instruction. We have explained that impairment of earning capacity is a proper element of recovery when two elements have been proven: permanent injury and reasonable degree of certainty of the damages. *Jordan v. Bero,* 158 W.Va. 28, 52, 210 S.E.2d 618, 634 (1974). We held in syllabus point 9 of *Jordan* that "[t]he permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to award an injured party future damages." *Id.,* 158 W.Va. at 29, 210 S.E.2d at 623; *accord Dowey v. Bonnell,* 181 W.Va. 101, 380 S.E.2d 453 (1989). We also explained the following in syllabus point 2 of *Flannery v. United States,* 171 W.Va. 27, 297 S.E.2d 433 (1982),

> 'Future damages are those sums awarded to an injured party for, among other things: (1) Residuals or future effects of an injury which have reduced the capability of an individual to function as a whole man; (2) future pain and suffering; (3) loss or impairment of earning capacity; and (4) future medical expenses.' Syllabus Point 10, *Jordan v. Bero,* [158] W.Va. [28], 210 S.E.2d 618 (1974).

In *Jordan,* we dealt with an injury to a ten-year-old boy who had been hit by an automobile while riding his bicycle and had suffered a massive head wound. We did allow "reasonable inferences arising from the evidence in proof of future effects of permanent injury." *Id.,* 158 W.Va. at 56, 210 S.E.2d at 636. We cautioned, however, that such approach "cannot be extended to unreasonable lengths in support of instant claims for impairment of earning capacity and future medical expenses...." *Id.* We emphasized in *Jordan* that "impairment of earning capacity is an item of permanent damages which again must be proved to a

reasonable degree of certainty; it cannot be left to sheer speculation or surmise." *Id.,* 158 W.Va. at 57, 210 S.E.2d at 637. We recognized that while the father's testimony regarding his son's performance of chores was competent, it was "of slight inferential value as to be deficient when it is asserted in support of a permissive instruction allowing the jury to make an award for impairment of earning capacity...." *Id.* We concluded that "where the permanent injury is proven, reasonable inferences based upon sufficient evidence are all that is necessary to carry the question to the jury for its consideration. Here, however, the evidence was *de minimis* and was not sufficient to raise a proper inference for the jury's consideration." *Id.,* 158 W.Va. at 57, 210 S.E.2d at 637.

■ The appellee in the present case introduced neither vocational evidence regarding future work capacity nor expert economic evidence either as to diminished earning capacity or as to reduction to present value. Ideally, the claim of diminished earning capacity could have been supported by testimony of a vocational expert regarding what types of jobs the appellee would be capable of performing and an economist to calculate future losses. The "reasonable degree of certainty" requirement of *Jordan* would have been more closely followed through the introduction of such testimony. 158 W.Va. at 56, 210 S.E.2d at 637. The appellants in the present case emphasize, for instance, that the injuries resulting from the accident, a cervical strain and exacerbation of a pre-existing depression, are obscure injuries which are not readily apparent to the casual onlooker, implying a greater necessity for expert evaluation of future effects. Dr. James Michael Herr, an orthopedist, testified that the appellee was permanently disabled. Dr. Francis Whalen, a psychiatrist, also testified that the appellee was

---

**4.** The diminished earning capacity instruction provided as follows:

> You are further accordingly instructed that if you believe from a preponderance of the evidence to a reasonable certainty that Debra Adkins' capacity to earn wages or labor in the future has been reduced or diminished as a proximate result of the defendants' negli-

gence, then, in addition to the above you may award her such sums as if paid now will be fair and reasonable compensation for any such reduced capacity to earn wages and labor in the future. This is so regardless of the plaintiff's intention with regard to future employment.

permanently disabled and that her depression was a result of the auto accident.[5]

The appellants further contend that neither the appellee nor her attorney was qualified to testify that the appellee was permanently disabled from all employment. Certainly, the appellee's counsel's closing argument that calculating future damages by multiplying figures of rate of pay and life expectancy and dividing that amount in half to represent present value must be examined with caution.[6] We do recognize that the appellee presented some evidence of diminished earning capacity; however, we do not believe that the *Jordan* requirement of proof to a reasonable degree of certainty has been satisfied. We do not suggest that expert economic or vocational evidence is mandatory in every instance; yet, we do reiterate our requirement of proof of future economic loss to a reasonable degree of certainty.

Especially where no expert evidence regarding appropriate reduction of an award to present value is introduced, we believe that the trial court is obligated to direct the jury in adjusting the award to present value. An illuminating discussion of this issue was recently presented by the Supreme Court of South Dakota in *Howard v. Sanborn,* 483 N.W.2d 796 (S.D.1992). In *Howard,* injured motorists brought an action against the driver of the other vehicle involved in an automobile accident. In addressing an issue regarding an instruction on calculation of the present value of an award, the South Dakota Supreme Court compared the instruction to the federal instruction suggested in 3 Edward Devitt, Charles Blackmar & Michael Wolff, *Federal Jury Practice and Instructions: Civil* § 85.11 at 325–26 (4th ed. 1987).[7] *Howard,*

---

5. Dr. Herr testified that he had treated the appellee for approximately four years and that her condition had deteriorated to permanent disability. Dr. Whalen also testified that the appellee suffered from chronic pain depression and that her disability would not resolve itself.

6. Counsel's statement indicated to the jury that present value could be calculated by dividing the original monetary figure in half. This statement constitutes an oversimplification of an economic reality. Economists calculate the present value of the future dollar through a specific formula. The element of interest rate may be in controversy depending upon the individual economist's approach, i.e., use of short-term United States Treasury Bills as the rate or some other rate of interest. As we noted in footnote two of *Morris v. Boppana,* 182 W.Va. 248, 387 S.E.2d 302 (1989),

The rationale behind the reduction of damages to present value may be explained as follows:

'The current practice in personal injury litigation is to award plaintiffs a present sum of money as compensation for after-tax lost earnings. The intention is to make the plaintiff "whole" in the sense that the present value award allows the plaintiff, through investment in relatively safe securities, to replicate over time the lost earnings stream. The amount of such an award therefore depends on the rate of growth expected in after-tax earnings in the plaintiff's pre-injury occupation and the after-tax rate of interest the plaintiff is expected to earn through investing the award.'

Anderson and Roberts, *Misconceptions in Discounting Lost Earnings to Present Value: Re-*

*joinder and Clarification of Fulmer–Geraghty, Lewis and Ledford–Zocco,* 37 Fed.Ins.Coun.Q. 21, 22 (1986).

7. The federal instruction provides as follows:

If you should find that the plaintiff is entitled to a verdict, and further find that the evidence in the case establishes either: (1) a reasonable likelihood of future medical expense, or (2) a reasonable likelihood of loss of future earnings, then it becomes the duty of the jury to ascertain the present worth in dollars of such future damage, since the award of future damages necessarily requires that payment be made now for a loss that will not actually be sustained until some future date.

Under these circumstances, the result is that the plaintiff will in effect be reimbursed in advance of the loss, and so will have the use of money which he would not have received until some future date, but for the verdict.

In order to make a reasonable adjustment for the present use, interest fee, of money representing a lump-sum payment of anticipated future loss, the law requires that the jury discount, or reduce to its present worth, the amount of the anticipated future loss, by taking (1) the interest rate or return which the plaintiff could reasonably be expected to receive on an investment of the lump-sum payment, together with (2) the period of time over which the future loss is reasonably certain to be sustained; and then reduce, or in effect deduct from, the total amount of anticipated future loss whatever that amount would be reasonably certain to earn or return, if invested at such rate of interest over such future period of time; and include in the

483 N.W.2d at 799–800. The South Dakota Supreme Court concluded that although expert testimony on the issue of the reduction of future earnings to present value is not required in every case, where an expert testifies and reduces the damages to present value, an instruction "which includes present worth tables must be carefully crafted to prevent confusion." *Id.* at 801. The Court in *Howard* further held that where there is no expert testimony on present value, "the jury must have some direction to help it intelligently reduce the award to present value." *Id.* As recognized in *Brodie v. Philadelphia Transportation Co.*, 415 Pa. 296, 302, 203 A.2d 657, 660 (1964), and cited with approval in *Howard,*

> 'The involved process of reducing future losses to their present worth has, undoubtedly, led to confusion and guesswork verdicts. *Reason, logic and fairness would, therefore, dictate that enlightenment is necessary.* Such can be provided, at least in part, by permitting the *use of accepted tables or the testimony of a qualified expert,* who can compose the proper computations.'

483 N.W.2d at 801–02 (quoting *Watkins v. Ebach,* 291 N.W.2d 765, 767 (S.D.1980) quoting *Brodie,* 415 Pa. at 302, 203 A.2d at 660).

■ Although expert economic evidence may not be necessary in every case, an instruction regarding appropriate reduction of an award to present value should be presented to the jury both in cases where expert economic evidence is presented as well as in cases where no such evidence is presented. Furthermore, where permanent

> verdict an award for only the present-worth—the reduced amount—of anticipated future loss.
>
> (In determining future losses, you may consider such additional income as the evidence shows he would have been likely to receive in the future, such as wage increases due to promotions, increased experience, merit raises, and increased productivity, if there is evidence concerning them.)
>
> (As already explained to you, this computation is readily made by using the so-called 'present worth' tables, which the Court has judicially noticed and received in evidence in this case.)

injury is alleged, as in the present case, the prudent plaintiff's counsel would seek to introduce vocational evidence in addition to medical evidence of permanent injury in order to assist the jury in ascertaining the extent and permanency of the plaintiff's alleged inability to engage in gainful employment. Similarly, prudent defense counsel would also present such evidence in order to assist the jury in determining whether the plaintiff would be capable of some other future employment which might mitigate the damages for loss of future earning capacity.

Due to the lack of proof of diminished earning capacity to a reasonable degree of certainty, the issue of diminished earning capacity should not have been submitted to the jury. Consequently, we must reverse this matter and remand it for a new trial on the issue of damages alone, with special emphasis on the establishment of future economic damages to a reasonable degree of certainty.

### III.

■ The appellants also allege error in the trial court's failure to grant a new trial or a remittitur in light of the large verdict. We have consistently held that " '[c]ourts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption.' Syl. Pt., *Addair v. Majestic Petroleum Co., Inc.,* 160 W.Va. 105, 232 S.E.2d 821 (1977)." Syl. Pt. 5, *Roberts,* 176 W.Va. at 492, 345 S.E.2d at 793.

> (Bear in mind that your duty to discount to present value applies to loss of future earnings or future medical expenses only. If you should find that the plaintiff is entitled to damages for future pain and suffering or future mental anguish, then such award is not subject to any reduction for the present use of such money.)
>
> *See* 3 Devitt, Blackmar & Wolff, *supra* § 85.11 at 325–26.
>
> We cite this instruction with approval except that the language in the first paragraph as to "reasonable likelihood" should be modified to "reasonable certainty" in order to comport with *Jordan. See* 158 W.Va. at 56, 210 S.E.2d at 637.

The appellee presented evidence of significant injury and disfigurement resulting from the accident. As recognized by the lower court in denying the appellants' motions for a new trial and to set aside the verdict,

> It appears to me that the jury simply did not buy the argument that this woman was not injured and was not in great pain in the past and presently as she appeared before the jury. She was a pitiful figure there, and I—I don't think that was lost on the jury.

In light of the evidence presented, we do not believe that the jury verdict should be set aside as excessive or that a remittitur should be granted.[8]

Due to the absence of special interrogatories to the jury, we are unable to speculate regarding the jury's specific calculation of its award. Failure to submit a special interrogatory to the jury can lead to various unexpected areas of uncertainty upon appellate review of a jury verdict. In attempting to resolve an issue of prejudgment interest and its application to special or liquidated damages, for instance, we explained in syllabus point 3 of *Beard v. Lim,* 185 W.Va. 749, 408 S.E.2d 772 (1991), that prudent defense counsel should seek a special interrogatory on the issue of special damages in order to secure appropriate application of prejudgment interest principles. *Accord* Syl. Pt. 3, *Perdue v. Doolittle,* 186 W.Va. 681, 414 S.E.2d 442 (1992).

Similarly, the present inability to distinguish among the various categories for which the jury compensated the appellee could have been avoided by the submission of a special interrogatory. Had the verdict form delineated the nature of damages awarded, we could strike the award for loss of future earning capacity, if any, as being inadequately supported by the evidence and without proper legal instruction. Because there was no such delineation, it is possible the verdict was for other items of damages. Consequently, in the absence of a specific verdict form submitted at trial, the plaintiff should be given the benefit of the doubt and have an opportunity for remand. If the award was based upon pain and suffering as adjudged by the jury, that was clearly in their province under the evidence presented and could not be deemed excessive as a matter of law. If, however, it was based upon the speculative testimony presented on the issue of future economic damages, it cannot stand.

Our conclusion that this matter should be remanded on the issue of future economic damages is based upon our belief that the appellee presented significant evidence of permanent injury but failed to present evidence of future economic ramifications of the injury to a reasonable degree of certainty. Upon remand, the permanency of the appellee's injury, as proven in the previous trial, should be presumed, and evidence of future economic loss should be presented to permit a reliable calculation of economic loss.

Reversed and remanded.

---

**8.** The appellants also allege error surrounding a statement made by counsel for the appellee in closing argument regarding damages and the desire that they not be based upon sympathy. Counsel explained that " '[w]e would rather that you give us a $200,000.00 verdict based upon the evidence than a $2,000,000.00 verdict based upon sympathy.' " We believe that counsel's statement was only intended to be an example and in no manner could be considered error or prejudicial to the appellants.

We do caution counsel, however, of our previous statement in syllabus point 7 of *Bennett v. 3 C Coal Co.,* 180 W.Va. 665, 379 S.E.2d 388 (1989), in which we held the following:

> "The better practice in civil cases is to avoid mentioning to the jury the amount sued for, but such disclosure alone may not be reversible error. However, in a case involving only damages for mental distress, disclosure of such information may result in reversible error where the verdict is obviously influenced by such statement."