499 S.E.2d 307

**Jerry HARRIS and Nora Harris, Plaintiffs below, Appellant and Cross–Appellee,**

v.

**MARTINKA COAL COMPANY, Defendant below, Appellee and Cross–Appellant.**

**No. 24127.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 14, 1997.

Decided Dec. 5, 1997.

Allan N. Karlin, Jack S. Kaplan, Morgantown, for Appellants/Cross–Appellees.

Steven P. McGowan, Ancil G. Ramey, Steptoe & Johnson, Charleston, for Appellee/Cross–Appellant.

Robert M. Bastress, Emily A. Spieler, Morgantown, for *Amici Curiae* United Mineworkers of America International Union; The West Virginia AFL–CIO; and The United Steelworkers of America, AFL–CIO–CLC.

A.L. Emch, Mychal S. Schulz, Jackson & Kelly, Charleston, for *Amicus Curiae* West Virginia Business & Industry Council.

PER CURIAM: [1]

This appeal from the Circuit Court of Marion County arises from a deliberate intention

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) (*"Per curiam* opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the

action filed against an employer pursuant to *W.Va.Code*, 23–4–2 [1994]. A jury returned a verdict for the plaintiffs, Jerry and Nora Harris, and awarded $1.729 million for injuries Mr. Harris suffered in an underground mine accident while working for his employer, defendant Martinka Coal Company ("Martinka"). After hearing post-trial motions, the circuit court set the verdict aside as being "clearly influenced by passion, partiality and prejudice" and granted the defendant a new trial.

The plaintiffs appeal arguing that the circuit court erred in setting aside the jury's verdict. The defendant has cross-appealed, arguing that the circuit court should have entered judgment notwithstanding the verdict on the defendant's behalf. After carefully reviewing the briefs of the parties and the detailed record, we reverse the circuit court's order and remand the case for entry of judgment on the jury's verdict.

### I.

#### A. Defendant's Appeal

■ In this case we are asked to determine whether the jury's verdict was supported by the evidence. In doing so, we must review the facts in a light favorable to the prevailing party, the plaintiff. This Court has held:

> In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which

the jury might properly find under the evidence, must be assumed as true.

Syllabus Point 3, *Walker v. Monongahela Power Company*, 147 W.Va. 825, 131 S.E.2d 736 (1963). *In accord*, Syllabus Point 4, *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986); Syllabus Point 2, *Cox v. Galigher Motor Sales Co.*, 158 W.Va. 685, 213 S.E.2d 475 (1975).

We address the defendant's cross-appeal first. The defendant appeals the circuit court's order granting a new trial, arguing that the circuit court erred and should have entered judgment notwithstanding the jury's verdict on the ground that the plaintiff failed to prove he was injured with deliberate intent as required by *W.Va.Code*, 23–4–2(c)(2)(ii) [1994].

Plaintiff Jerry Harris was employed by the defendant as an underground miner. On November 12, 1992, the plaintiff was severely injured in a collision when the personnel carrier (called a "bus") in which he was riding was struck hard from behind by a 20–ton locomotive (called a "motor"). The bus was driven by Martinka supervisor James Chiater.

Federal and state laws required that before any vehicle can be moved in a mine, the driver of the vehicle is required to coordinate that movement by radio with the mine dispatcher; no vehicle can move without authorization from the dispatcher. Furthermore, the law requires the driver of any bus to ensure that the track is clear before moving. *See* 30 C.F.R. § 76.1403–7(g), (j);[2] *W.Va.Code*, 22A–2–37(t)(2) [1987].[3] These laws applied to the facts in the instant case.

---

**2.** The terms "personnel carrier," "bus," and "mantrip" are interchangeable. 30 C.F.R. § 75.1403–7(g) states:

> All mantrips should be under the direction of a supervisor and the operator of each mantrip

should be familiar with the haulage safety rules and regulations.
30 C.F.R. § 75.1403–7(j) states:
Mantrips should not be permitted to proceed until the operator of the mantrip is assured that he has a clear road.

**3.** *W.Va.Code*, 22A–2–37(t)(2)[1987] states:

> In any coal mine where more than three hundred fifty tons of coal are produced on any shift in each twenty-four hour period, a dispatcher shall be on duty when there are movements of track equipment underground, including time when there is no production of coal. Such traffic shall move only at the direction of the dispatcher.

---

syllabus point is merely *obiter dicta* .... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.")

Evidence was presented at trial showing that the mine dispatcher told Mr. Chiater to keep his bus off the main line tracks because two 20–ton motors were already using the line and were headed in Mr. Chiater's direction. The evidence supports the conclusion that Mr. Chiater ignored or did not hear the radio directions from the mine dispatcher to keep his personnel carrier off of the main line. Mr. Chiater pulled his bus, with the plaintiff on board, onto the main line and proceeded to another area of the mine. An expert witness testified at trial that Mr. Chiater's actions violated both federal and state law, and created an extremely dangerous working condition that presented a high degree of risk and a strong probability of serious injury or death.

Before Mr. Chiater reached his destination, the bus was struck hard from behind by a 20–ton motor with a force sufficient to knock the bus approximately 30 to 50 feet. The plaintiff was seriously injured in this collision.

Evidence was presented showing that the operation of the 20–ton motor was being overseen by another of the defendant's supervisors, Jerry McClure. Mr. McClure, the maintenance supervisor for Martinka, testified that he intended to take the motor out of service at the end of the shift because the primary braking system was slipping, and the operators of the motor had been repeatedly having problems stopping the vehicle.

Witness testimony indicated that, in addition to the problems with the braking system, Mr. McClure allowed the motor to be driven at an excessive rate of speed. Witnesses gave the opinion that an experienced supervisor would have recognized that traveling the main line tracks at excessive speeds in a motor that had problems stopping was a violation of safety standards, and that this conduct created a high degree of risk and strong probability of serious injury or death.

As is required by *W.Va.Code*, 23–4–2(c)(2)(ii) [1994], the jury was presented with two separate sets of five interrogatories to answer concerning whether supervisor Chiater "entered the main line without proper clearance from the dispatcher," and whether the motor occupied by supervisor McClure "was traveling at excessive speed." The jury answered each of the ten interrogatories "yes," determining (1) that each supervisor's actions created a specific unsafe working condition which presented a high degree of risk and a strong probability of serious injury or death; (2) that a management employee of the defendant had a subjective realization and appreciation of each specific unsafe working condition and the risk it posed; (3) that both specific unsafe working conditions were violations of a statute, rule, or safety standard; (4) that, notwithstanding the existence of facts set forth in (1) through (3), a management employee of the defendant intentionally exposed the plaintiff to each specific unsafe working condition; and (5) that the plaintiff suffered his injury as a proximate result of being exposed to the specific unsafe working conditions.

■ The defendant argues that, under *W.Va.Code*, 23–4–2 [1994], liability cannot be imposed on an employer solely because an employee is injured as the result of the violation of a safety standard by management personnel, particularly when there is no evidence such a violation occurred in the past, no evidence that complaints about past violations were made to higher management, and no evidence there was an opportunity for higher management to prevent the violations.

*W.Va.Code*, 23–4–2(c)(2)(ii) [1994] sets forth one of the limited grounds for removing an employer's workers' compensation immunity from suit where there is evidence that the employer acted with "deliberate intent," [4]

---

*W.Va.Code*, 22A–2–37 was amended in 1997, but no substantive changes affecting this appeal were made.

**4.** Another means for removing immunity is found in *W.Va.Code*, 23–4–2(c)(2)(i) [1994], which removes an employer's immunity if "[i]t is proved that such employer ... acted with a consciously,

subjectively and deliberately formed intention to produce the specific result of injury or death to an employee."

Certain employers may also be subjected to liability for personal injuries to employees caused through the employer's "wrongful act, neglect or default" if the employer fails to subscribe to or

and thereby allows employees to bring actions for injuries received in the course of their employment. The statute states that an employer can be held liable only if:

The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as direct and proximate result of such specific unsafe working condition.

■ We reject the defendant's contention that a plaintiff is required to introduce evidence of factors beyond those stated in *W.Va.Code,* 23–4–2(c)(2)(ii) [1994]. As we stated in Syllabus Point 2 of *Mayles v. Sho-*

ney's, Inc., 185 W.Va. 88, 405 S.E.2d 15 (1990):

A plaintiff may establish "deliberate intention" in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in W.Va.Code Sec. 23–4–2(c)(2)(ii) (1983).

*In accord,* Syllabus Point 2, *Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 408 S.E.2d 385 (1991); Syllabus Point 2, *Sias v. W–P Coal Co.,* 185 W.Va. 569, 408 S.E.2d 321 (1991). In *Mayles* we approved a jury instruction stating a plaintiff "need only prove" the five statutory elements of *W.Va.Code,* 23–4–2(c)(2)(ii) [1994], because such words "were used to explain that no higher burden [of proof] existed." 185 W.Va. at 97, 405 S.E.2d at 24. While a plaintiff may introduce evidence of prior similar violations or complaints to prove an employer had knowledge of the risks concerning a specific unsafe working condition, or to show an employer intentionally exposed an employee to a hazard, we do not see a requirement for this type of evidence in *W.Va.Code,* 23–4–2(c)(2)(ii) [1994].

■ We have reviewed the record in this case in light of the language of *W.Va.Code,* 23–4–2(c)(2)(ii) [1994], and conclude that evidence was presented to the jury sufficient to support each of the five statutory elements.

First, the actions of supervisors Chiater and McClure constituted "specific unsafe working condition[s] which presented a high degree of risk and a strong probability of injury or death." Second, because Chiater and McClure were management employees, it is clear that the "employer" had a subjective realization and appreciation of the unsafe condition. Next, the evidence supports a finding that the operation of Chiater's bus constituted "a violation of a state or federal safety statute, rule or regulation," and that the operation of the 20–ton motor at an excessive speed violated a "commonly accepted and well-known safety standard within the industry."

Fourth, there is evidence to support a finding that notwithstanding the existence of

pay premiums into the workers' compensation fund. *See W.Va.Code,* 23–2–8 [1991].

the above facts, the "employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally." We do not accept the defendant's argument that, under *W.Va.Code*, 23–4–2(c)(2)(ii)(D), the term "thereafter" requires an extended period of time to lapse between the creation of the unsafe condition and the worker's injury. Lastly, there is ample evidence to support the conclusion that the plaintiff, upon being exposed to the specific unsafe working conditions, "suffered serious injury . . . as a direct and proximate result of such specific unsafe working condition[s]."

Accordingly, we conclude that the jury's verdict as to liability was supported by the evidence, and the defendant was not entitled to judgment notwithstanding that verdict.

### B. Plaintiffs' Appeal

■ The plaintiffs appeal the circuit court's order which set aside the jury's verdict as excessive. The plaintiffs contend that the circuit court failed to apply the correct legal standards and that the circuit court improperly relied upon matters which were not a part of the court record. We agree.

In the November 1992 collision between the 20–ton motor and the bus in which he was riding, Mr. Harris suffered serious spinal injuries. Multiple surgeries were required to repair the injuries requiring the plaintiff to spend three months in a body cast. The surgeries left the plaintiff with an incisional hernia, a pulmonary embolism, and scarring, as well as leaving the plaintiff several inches shorter due to a curvature of his spine. Mr. Harris testified to having continuous pain and an inability to bend over or lift anything. The evidence suggested that the injuries impaired Mr. Harris' ability to maintain and make repairs around his home, and altered his relationship with his wife. An economic expert testified that Mr. Harris's economic losses were between $336,638.00 and $436,915.00. The expert valued lost household services at $143,934.00.

It is important to note that the defendant offered no evidence or cross-examination on the issue of damages, and did not argue damages to the jury.

On April 4, 1996, the jury returned a verdict for the plaintiffs. The jury awarded Mr. Harris $386,000.00 for past and future wage losses, $143,986.00 for lost past and future household services, and $1,000,000.00 for pain and suffering. Additionally, the jury awarded $200,000.00 to Mrs. Harris for her loss of consortium, for a combined total verdict of $1,729,000.00. In response to this verdict, the defendant filed a motion for a new trial pursuant to *W.Va.R.Civ.P.* Rule 59 [1978] or for judgment notwithstanding the verdict pursuant to *W.Va.R.Civ.P.* Rule 50(b) [1978].

By an order dated January 17, 1997, the circuit court granted the defendant's motion for a new trial. Without taking any evidence or referring to any matters of record, the circuit court concluded that the jury's verdict was "clearly influenced by passion, partiality and prejudice" and that the "size of the verdict in this case was, in part, a reaction to the negative political campaign in this area that had an emphasis on the employment actions of the defendant. . . ."

■ Our review of a trial judge's decision to vacate a jury's verdict is governed by an abuse of discretion standard. Syllabus Point 3, *In re: State Public Bldg. Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (W.Va.1994). A trial judge may not set aside a jury's verdict as excessive unless it is "monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show[s] jury passion, partiality, prejudice or corruption." Syllabus, *Addair v. Majestic Petroleum Co., Inc.*, 160 W.Va. 105, 232 S.E.2d 821 (1977). *In accord*, Syllabus Point 5, *Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 461 S.E.2d 149 (1995); Syllabus Point 2, *Capper v. Gates*, 193 W.Va. 9, 454 S.E.2d 54 (1994); Syllabus Point 3, *Adkins v. Foster*, 187 W.Va. 730, 421 S.E.2d 271 (1992); Syllabus Point 6, *Torrence v. Kusminsky*, 185 W.Va. 734, 408 S.E.2d 684 (1991); Syllabus Point 3, *Reager v. Anderson*, 179 W.Va. 691, 371 S.E.2d 619 (1988); Syllabus Point 5, *Roberts v. Stevens Clinic Hospital, Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986); Syllabus Point 10, *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 307 S.E.2d 603 (1983).

After reviewing the evidence in this case, we conclude that the circuit court abused its discretion in awarding a new trial. The plaintiffs' evidence clearly showed that the plaintiffs' injuries were permanent and excessive, and this evidence was not controverted in any way by the defendant.

Furthermore, the circuit court failed to conduct any evidentiary hearings on the issue of jury "passion, partiality, prejudice, or corruption." Aside from speculation about circumstances that might have influenced the jury, there was no evidence that would support the conclusion that the jury's verdict was the result of anything other than a careful review of the evidence.

Accordingly, the circuit court's order must be reversed, and the case remanded for entry of judgment on the jury's verdict.

## II.

For the foregoing reasons, the circuit court's January 17, 1997 order granting a new trial is reversed, and the case is remanded for entry of judgment upon the jury's verdict.

Reversed and remanded.